## COMMONWEALTH *vs.* SUFFOLK TRUST COMPANY.

Suffolk.   March 23, 1894. — June 21, 1894.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Appeal from Decree of Single Justice — Record — Deposit in Trust Company — Assignment — Ultra Vires.*

An appeal from the decree of a single justice brings up merely the record of the case, and parties cannot, at least without the sanction of the single justice, add to or diminish the record; and the question before the court, on such an appeal, is whether the decree is justified by the record.

Without considering the question whether generally an endowment order has or has not the power to borrow money, or whether an action can be maintained against it upon its promissory note, it has the power to deposit its money in a trust company and to draw it out when needed, and, on the failure of the trust company, a claim against it accrues in favor of the order, which claim the order can assign by way of pledge.

The by-laws of an endowment order provided that the officers should be a president, clerk, treasurer, secretary, superintendent, and three trustees; that they should constitute a supreme executive board, with the power of directors; that they should have in general "all the powers of the corporation except as limited by the vote of the stockholders"; and that four should constitute a quorum. On July 25, 1891, E., the supreme treasurer and secretary, and G., the supreme president, having bought the shares of stock of the other incorporators, the other officers resigned except one, who with the two first named continued in office.   Notices of these changes were sent to the certificate holders, and no question was made as to the validity of the transaction, or as to the authority of the treasurer and president to conduct the affairs of the order.   At the time when E. and G. were elected president and secretary, they held the offices of superintendent and trustee, which offices they did not resign.   There was nothing in the by-laws to show that a person could not hold two offices, and when the officers were first elected the same person was chosen both clerk and trustee. The order had a deposit in the A. Trust Company in the names of G., president, and E., treasurer, who, not being able to draw it as the company was in the hands of a receiver, borrowed, on September 25, 1891, a sum of money from the B. Trust Company and gave an assignment in writing of the claim of the order against the A. Trust Company as security therefor.   The assignment purported to be the instrument of the order, to be executed by it "by E., Supreme Treasurer," and to be assented to "by G., Supreme President."   *Held,* that, without considering whether E. and G. could legally act as directors under the by-laws, so as to hold a directors' meeting, it was clear that an invalid vote of the directors could be ratified by the order, and as E. and G. were then the only stockholders and passed the vote, and had ever since acquiesced in it, and the order had received the benefit of the money, the receiver of the order could not ask a court of equity to forbid the payment of the debt out of the fund in the hands of the receiver of the A. Trust Company.

LATHROP, J.   This is an appeal by the receiver of the Mutual
Life Endowment Order from a decree of a single justice of this
court, directing the receiver of the Suffolk Trust Company to
pay to the International Trust Company the sum of two thou-
sand dollars, with interest at the rate of seven per cent per
annum, from March 30, 1892.

Before the case was heard by the single justice, it was sent to
a master, who heard the parties and made a report, which, with
certain exhibits annexed thereto, appears in the papers before us.

After the appeal was taken, the counsel for the respective
parties, without the sanction of the justice who heard the case,
made an agreement as to certain evidence which the agreement
states was put in before the single justice, and as to the con-
tents of certain exhibits annexed to the master's report, which
are not set forth in those exhibits as annexed.   This proceeding
was wholly irregular.   An appeal from the decree of a single
justice brings up merely the record of the case, and parties can-
not, at least without the sanction of the single justice, add to or
diminish the record.   The question before us, on such an appeal,
is whether the decree is justified by the record.   From the
record in this case the following facts appear.

The Mutual Life Endowment Order, a corporation estab-
lished under the laws of New Hampshire, in 1891 had a de-
posit of ten thousand dollars in the Suffolk Trust Company,
standing in the names of George F. Morse, president, and Edwin
J. Morse, treasurer.   On September 25, 1891, these persons, not
being able to draw out the ten thousand dollars, or any part of
it, on account of the failure of the Suffolk Trust Company,
which was then in the hands of a receiver, and desiring to ob-
tain two thousand dollars for the purposes of the corporation of
which they were officers, borrowed two thousand dollars from
the International Trust Company, and gave an assignment in
writing of the claim of the Mutual Life Endowment Order
against the Suffolk Trust Company as security therefor.   The
assignment purported to be the instrument of the Order, to be
executed by it "by Edwin J. Morse, Supreme Treasurer," and to
be assented to " by George F. Morse, Supreme President."   The
assignment recited that it was " made to secure the payment of
the promissory note of the said Mutual Life Endowment Order

to the said International Trust Company of even date herewith for the sum of two thousand dollars." At the same time a promissory note of the Order for two thousand dollars, with interest at the rate of seven per cent per annum, was delivered to the International Trust Company.

The money so received was paid out to certificate holders in the usual course of business, just as if it had been drawn from the Suffolk Trust Company, and in accordance with the rules of the Order. No question was made by any of the members of the Order as to the validity of this transaction, or by any one else except by the receiver of that Order.

The receiver concedes that the Mutual Life Endowment Order had, under the laws of the State of New Hampshire, the power to make contracts necessary and proper for the transaction of its authorized business; but he contends that, as it was a fraternal benevolent association, it had no power to borrow money; and that the transaction in question was *ultra vires.*

We have no occasion to consider the question whether generally such a corporation has or has not the power to borrow money, or whether an action could be maintained against it upon its promissory note. It had undoubtedly the power to deposit its money in the Suffolk Trust Company, and to draw it out from time to time, as needed in the course of its business. On the failure of the Suffolk Trust Company, a claim against it accrued in favor of the Mutual Life Endowment Order. This claim it could collect, or, if the exigencies of its business required, it could sell outright. And we have no doubt that it could assign the claim by way of pledge. It was certainly reasonable that it should do so, under the power to make contracts necessary and proper for the transaction of its authorized business; and we have no doubt that the transaction in this case, which, in effect, was merely a device to draw money which could not be got directly, was valid.

While the assignment was in terms to secure the note, the effect of it was to secure the debt. Equity in such a case disregards the form, and looks at the real nature of the transaction. In *Scott* v. *Colburn,* 26 Beav. 276, the directors of a company were prohibited from giving bills of exchange, but had the power to borrow on mortgage. They however gave bills of

exchange to secure an existing debt, and a mortgage was at the same time executed under the seal of the company, conditioned on the payment of the bills. It was held that the mortgage was to be regarded as given to secure the debt, and not the payment of the bills, and therefore was not invalid.

It is further contended by the receiver, that George F. Morse and Edwin J. Morse had no authority to execute the assignment. The by-laws of the Order provided that the officers should be a president, clerk, treasurer, secretary, superintendent, and three trustees; that these officers should constitute a supreme executive board, with the power of directors; that they should have in general " all the powers of the corporation, except as limited by the vote of the stockholders "; and that four should constitute a quorum of the board. On July 25, 1891, the two Morses bought the shares of stock of the other incorporators. All of the other officers resigned except one, the clerk, named Warren, and he and the two Morses continued to act as the officers of the Order, George F. Morse having been elected president, and Edwin J. Morse secretary and treasurer. Notices of these changes were sent to the certificate holders, and it did not appear that any question was made in regard to the validity of the transaction, or as to the authority of the Morses to act or to conduct the affairs of the Order. At the time the Morses were elected president and secretary, they held the offices of superintendent and trustee, and it does not appear that they resigned these offices. There is nothing in the by-laws to show that a person could not hold two offices, and when the officers were first elected Warren was chosen both clerk and trustee. Without, however, considering whether they could legally act as directors under the by-laws, so as to hold a directors' meeting, it is clear that an invalid vote of the directors could be ratified by the Order, and as the Morses were then the only stockholders, and passed the vote, and have ever since acquiesced in it, and the Order has received the benefit of the money, we see no ground upon which the receiver can ask a court of equity to forbid the payment of the debt out of the fund in the hands of the receiver of the Suffolk Trust Company.          *Decree affirmed.*

*J. R. Smith,* receiver, *pro se.*

*G. P. Wardner,* for the International Trust Company.